UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

UNITED STATES OF AMERICA

                  v.

VICTOR DELGADO,

                  Defendant.
--------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  1/27/2022

19-CR-732 (KMW)

**OPINION & ORDER**

KIMBA M. WOOD, United States District Judge:

      Defendant Victor Delgado has filed a motion for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A). (Mot., ECF No. 62.) The Government opposes the motion. For the reasons set forth below, Delgado's motion is DENIED.

### BACKGROUND

      From December 2018 through July 2019, Victor Delgado sent at least eighteen threatening letters to various recipients with one individual listed as the letters' sender, an individual against whom he harbored a grudge. (Gov't Opp'n at 1–2, ECF No. 66.) Thirteen of the letters contained a white powder. (*Id.*) These actions led to his being charged with stalking, in violation of 18 U.S.C. §§ 2261(b)(6), 2261A(2), and 2266(5). (Compl. at 1, ECF No. 1.) On October 11, 2019, Delgado pleaded guilty to stalking. (Gov't Opp'n at 6.) On September 24, 2020, Delgado was sentenced to 46 months' imprisonment. (*Id.* at 7.) His anticipated release date is November 12, 2022. (Mot. at 1, "Oct. 6 Letter.")

1

## PROCEDURAL HISTORY

On October 6, 2021, Delgado moved for compassionate release. (*Id.*) On October 24, 2021, Delgado supplemented the motion with a second letter. (Suppl. Letter, "Oct. 24 Letter" ECF No. 65.) On October 29, 2021, the Government filed its opposition. (Gov't Opp'n.)

The Government views Delgado's Oct. 24 Letter as a supplemental motion for compassionate release, rather than a supplemental letter, and argues that it is procedurally improper pursuant to section 3582(c)'s exhaustion requirement because he has not submitted each of his arguments in that letter to the Bureau of Prisons ("BOP"). (Gov't Opp'n at 10.)

## LEGAL STANDARD

Pursuant to 18 U.S.C. § 3582(c)(1)(A), as modified by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), a court may reduce a defendant's sentence upon motion by the Director of the BOP or upon motion by the defendant. A defendant may move under section 3582(c)(1)(A) only after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

### I.     Competing Considerations

A court may reduce a defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A), (A)(i). The court has discretion to consider "the full slate of extraordinary and compelling reasons" an inmate presents. *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020).

However, even if extraordinary and compelling reasons for compassionate release exist, courts may deny the motion if the 18 U.S.C § 3553(a) sentencing considerations outweigh those reasons.  *See, e.g.*, *United States v. Butler*, No. 19 Cr. 834-10 (PAE), 2020 WL 1689778, at *2–3 (S.D.N.Y. Apr. 7, 2020) (Engelmayer, J.).

## DISCUSSION

The Court considers three matters: first, satisfaction of the procedural requirement; second, the merits of the motion; and third, section 3553(a) sentencing factors.

**I.   Delgado Has Exhausted His Administrative Remedies**

   **A.  The Parties' Arguments**

The Government contends that Delgado failed to exhaust his remedies because he raises issues in the "supplemental motion" for compassionate release that he failed to raise in his original motion.  (Gov't Opp'n at 10.)   Delgado submitted two requests to the BOP for compassionate release.   In April 2020, the BOP denied Delgado's first request as an "Elderly Inmate with Medical Conditions."   (Gov't Suppl. Opp'n, Ex. A, ECF No. 69.)   In November 2020, the BOP denied Delgado's second request, which was based on his then-current medical conditions.   (Mot., Ex. 1.)

In Delgado's Oct. 6 Letter to the Court, he requested compassionate release based on the COVID-19 pandemic in combination with his age and medical conditions.   (Mot. at 2.)   In Delgado's Oct. 24 Letter, he "updates" the Court about his medical conditions and asserts that he is receiving insufficient medical care.   (Suppl. Letter at 1.)

The Government contends that Delgado's Oct. 24 Letter newly raises the issue that he is receiving insufficient medical care, separate from his concerns about COVID-19, which the BOP

3

was not told and therefore was not able to consider. (Gov't Opp'n at 14.) The Government appears to be referencing what is often called "issue exhaustion." *United States v. Torres*, 464 F. Supp. 3d 651, 655 (S.D.N.Y. 2020) (Stein, J.)[1]

### B. Judges Disagree About Issue Exhaustion

The Second Circuit has not addressed whether 18 U.S.C. § 3582(c) requires a defendant to exhaust the available BOP procedures with respect to each issue he raises. *United States v. Salemo*, No. 11-CR-65 (JSR), 2021 WL 4060354, at *2 (S.D.N.Y. Sept. 7, 2021) (Rakoff, J.). There is disagreement among judges in this district as to whether section 3582(c)(1)(A) requires issue exhaustion. *Compare Torres*, 464 F. Supp. 3d at 655 ("[T]here is no indication whatsoever in the statutory text [of 18 U.S.C. § 3582(c)] that issue exhaustion is required."), *with United States v. Gotti*, No. 02 CR 743-07 (CM), 2020 WL 7706828, at *2 (S.D.N.Y. Dec. 29, 2020) (McMahon, C.J.) ("It is well-settled that a defendant must show administrative exhaustion with respect to the specific basis for relief upon which he is relying.").

The Court joins the majority of district courts that have addressed issue exhaustion and concludes that it is not required. *See Torres*, 464 F. Supp. 3d at 657. An issue exhaustion requirement would have to be inferred from the text and structure of the statute. *See Sims v. Apfel*, 530 U.S. 103, 107 (2000) ("[R]equirements of administrative issue exhaustion are largely creatures of statute."). But, as Judge Stein explained in a persuasively reasoned opinion, the compassionate release statute contains no indication that issue exhaustion is required. *Torres*, 464 F. Supp. 3d at 655–56.

Even when a statute does not require issue exhaustion, "it is common for an agency's

---

[1] This doctrine is based on the notion that an issue not raised in an administrative proceeding has been waived. *Torres*, 464 F. Supp. 3d at 655 n.2.

regulations to require issue exhaustion in administrative appeals." *Sims*, 530 U.S. at 108. The BOP's regulations governing compassionate release do not require the BOP to consider exhaustion on each issue before a motion may be filed in district court. *See* 28 C.F.R. §§ 571.60–.64; *see also Torres*, 464 F. Supp. 3d at 655–56. Even in the absence of a statute or regulation, however, courts may still impose an issue exhaustion requirement. *Sims*, 530 U.S. at 108–09.

The sentence reduction statute does not have any of the features that have previously motivated courts to impose an issue exhaustion requirement. Courts have imposed issue exhaustion requirements when "the parties are expected to develop the issues in an adversarial administrative proceeding." *Sims*, 530 U.S. at 110. In contrast, where "proceedings are inquisitorial rather than adversarial," courts decline to require issue exhaustion. *Id.*; *see Salemo*, 2021 WL 4060354, at *3. The process for BOP evaluating a request for sentence reduction is inquisitorial—it requires BOP officials to investigate an inmate's request, and there is no requirement for the representative to serve as an inmate's adversary in the proceeding. *Torres*, 464 F. Supp. 3d at 656. The Court thus declines to impose a judicially created issue exhaustion requirement in this context. *See Salemo*, 2021 WL 4060354, at *3; *Torres*, 464 F. Supp. 3d at 657.

Accordingly, the Court holds that Delgado has satisfied section 3582(c)'s administrative exhaustion requirement, even though his Oct. 24 Letter presents issues not raised during the first internal BOP process.

**II.     Merits of the Motion: No Extraordinary and Compelling Reasons**

Delgado contends that, in light of his present medical conditions in combination with the COVID-19 pandemic, he has demonstrated extraordinary and compelling reasons for his release.

5

The arguments are unpersuasive.    The high number of positive COVID-19 tests at FCI Victorville is concerning—of the 1,360 inmates who have been tested, 441 have tested positive (Gov't Suppl. Opp'n at 2), and COVID-19 restrictions in BOP facilities have doubtless taken a toll on all inmates.    Still, (i) the Court was aware of Delgado's age, many of his health conditions, and the risks posed by COVID-19 at the time of sentencing one year ago, and (ii) Delgado has been fully vaccinated since May 12, 2021, having received one dose of the Pfizer COVID-19 vaccine on April 20, 2021 and a second on May 12, 2021.    (Gov't Opp'n at 7.) Although vaccinated individuals remain vulnerable to new COVID-19 infection and variants, any risk that Delgado may become severely ill from COVID-19 has been significantly reduced. *See United States v. Orlandez-Gamboa*, 99 Cr. 654 (CM), 2021 WL 2582077, at *3 (S.D.N.Y. June 23, 2021) (McMahon, J.) (finding defendant had failed to demonstrate extraordinary and compelling circumstances, even though he was in a high-risk age group, because he was "fully vaccinated against COVID-19").    Because he is fully vaccinated, Delgado's medical conditions—chronic hypertension, obesity, diabetes, hyperlipidemia, anxiety disorder, neck pain, obesity, dizziness, gastroesophageal reflux disease, vertigo, and skin lesions—do not place him at a considerably increased risk of severe illness from COVID-19.    (Gov't Opp'n at 7–8.)[2]

Delgado also contends that he is receiving insufficient medical care.    (Suppl. Letter at 1–2.)    That contention is unsupported.

Delgado's medical records reflect that after Delgado was evaluated on June 22, 2021, the physician ordered daily fecal occult blood tests for three days, monthly blood pressure tests, and

---

[2] Absent vaccination, obesity and diabetes would enhance Delgado's risk of becoming seriously ill if he were to contract COVID-19.  *People with Certain Medical Conditions*, Centers for Disease Control & Prevention (Oct. 14, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

6

monthly blood glucose tests. (Gov't Opp'n at 8, 18–19; Def. Letter at 5, ECF No. 68.)[3] Delgado's medical records reflect that the fecal occult blood tests were performed in May, 2021, several weeks before they were ordered, and that the results were all entered on the same day, August 6, 2021, at 9:59 p.m. (Gov't Opp'n at 8; Def. Letter at 4–5.) Although the parties disagree with respect to how they read the medical records, it is clear that as of October 13, 2021, Delgado had received at least three blood pressure tests and at least two blood glucose tests. (Gov't Opp'n at 8; Def. Letter at 4–5.) Mr. Delgado's medical records contain no reference to blood glucose tests having been administered to him in either July or August; the records state that he was a "no show" for his July test (which he disputes), and they show no such test having been administered for August. The Court will write to the Warden of FCI Victorville to stress that Mr. Delgado must receive every month the tests ordered on June 22, 2021 by Dr. Villalon.

After fainting on October 19, 2021, Delgado was diagnosed with a urinary tract infection and was treated with antibiotics. (Gov't Opp'n at 8.)

Where, as in this case, the defendant argues that his medical conditions provide the basis for immediate release, the existence of "extraordinary and compelling reasons" for immediate release turns on the defendant's physical conditions and the degree to which his physical conditions can be treated within the context of a correctional facility. *United States v. Hidalgo*, 462 F. Supp. 3d 470, 472 (S.D.N.Y. 2020) (Koeltl, J.). Courts in this circuit have found that this demanding standard is met upon the showing of "a specific life-ending or debilitating illness with a predictable, dire short-term prognosis." *United States v. Ebbers*, 432 F. Supp. 3d 421,

---

[3] Delgado's medical records are filed under seal.

429 (S.D.N.Y. 2020) (Caproni, J.*); see also United States v. Gileno*, 448 F. Supp. 3d 183, 187–88 (D. Conn. 2020) (collecting cases and stating that "[c]ourts grant sentence modifications or reductions based on defendants' medical conditions where those conditions are extremely serious, if not life-threatening").

Delgado's medical conditions, although serious, are not "life-ending," nor do they carry "a predictable, dire short-term prognosis." *Ebbers*, 432 F. Supp. at 429. So long as the medical staff at FCI Victorville conduct the tests ordered by Dr. Villalon, Delgado's correctional facility will be able to treat his medical conditions. The Court finds that Delgado has not demonstrated the existence of extraordinary and compelling reasons for early release.

### III. Section 3553(a) Sentencing Factors

Even if Delgado had demonstrated extraordinary and compelling reasons for early release, consideration of the section 3553(a) sentencing factors would militate against a sentence reduction. *See* 18 U.S.C. § 3553(a).

With respect to the nature and circumstances of the offense, Delgado's harassing behavior was repetitive, and spanned several years, causing "recipients of his mails, that included powder, to fear for their lives." (Aug. 18, 2020 Sent. Tr. at 18, ECF No. 42.) Delgado also falsely reported at least four emergencies, including a gas leak, a domestic violence incident, animal abuse, and the appearance of smoke. (Gov't Sent. Sub. at 3, ECF No. 35.) His actions prompted members of the FBI, NYPD, FDNY, and other agencies to be "diverted . . . from their federal and city agency work." (Aug. 18, 2020 Sent. Tr. at 18; *see* Gov't Sent. Sub. at 3.) At sentencing, the Court emphasized that Delgado's "character includes abundant cruelty, and willingness and desire to harm others." (Aug. 18, 2020 Sent. Tr. at 19.)

As the Court also stated at sentencing, that "were [it] not for the difficult circumstances

inmates face in the MDC," the Court would have "sentence[d] [the defendant] to the statutory maximum of 60 months." (*Id.* at 19–20.) The sentence imposed was necessary to "individually deter[]" the defendant "because of [the] length of time he harassed victims and the ferocity with which he claimed to be able to harm." (*Id.* at 19.) A lengthy sentence remains important to deter criminal conduct and to protect the public from further crimes.

Delgado has served approximately 28 months in detention, a little over half of his original 46-month sentence. (Mot. at 1.) Courts in this district have denied motions for compassionate release by defendants who have served comparable portions of their respective sentences. *See, e.g.*, *United States v. Nieves*, No. 12-cr-931 (AJN), 2020 WL 2476185, at *3 (S.D.N.Y. May 13, 2020) (Nathan, J.).

There is one section 3553(a) consideration that weighs in Delgado's favor. Early release may allow Delgado to receive "medical care . . . in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). If Delgado requires more extensive treatment for his medical conditions, he may receive it more expeditiously if he were outside the care of the BOP. The Court finds this consideration insufficient, however, to override the prior considerations.

The Court holds that granting compassionate release would not be consistent with the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and afford adequate deterrence to criminal conduct. *Id.* § 3553(a)(2)(A)–(B). On balance, the Court thus finds that the section 3553(a) sentencing considerations weigh against compassionate release.

9

## CONCLUSION

For the foregoing reasons, Delgado's motion for compassionate release is DENIED.

The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 62 and 65.

SO ORDERED.

Dated: New York, New York
January 27, 2022

                                                           */s/ Kimba M. Wood*
                                                          KIMBA M. WOOD
                                             United States District Judge